[No. 23413–7–I. Division One. April 16, 1990.]

THE STATE OF WASHINGTON, *Appellant*, v. BRIAN K. LANDEY, *Respondent*.

*Norm Maleng, Prosecuting Attorney*, and *Lee D. Yates, Senior Trial Attorney*, for appellant.

*Mark V. Watanabe*, for respondent.

WEBSTER, J.—The State appeals a dismissal of its information accusing Brian Landey of vehicular homicide. The State argues that the trial court erred in finding that a lapse of time between the filing of the charge and Landey's arraignment violated his right to speedy trial under CrR 3.3. We agree with the State and reverse.

FACTS

While he was driving on December 1, 1987, Landey's car collided with a vehicle attached to a tow truck. The tow truck's operator died allegedly as a result of the incident.

The police arrested Landey after the accident and discovered that he had a .13 percent blood alcohol level. Landey gave the arresting officer his home address in North Bend, Washington. The officer then drove Landey home and said, "we'll be in touch."

An attorney retained by Landey telephoned the officer on December 31, 1987, and asked the police to have no direct contact with Landey in the future. The attorney again called the officer on January 19, 1988, and arranged to have an expert inspect the vehicles involved in the collision.

Landey informed his attorney on February 10, 1988, that he had moved from North Bend to Maple Valley, Washington, and gave the attorney a new address. Landey caused a change–of–address form to be filed in the North Bend post office on February 12, 1988. Nothing in the record indicates that Landey or his attorney informed the State of the change of address.

On May 11, 1988, Landey's attorney telephoned a deputy prosecutor assigned to the case to arrange an inspection of evidence in the State's possession. The attorneys made contact several times during the following weeks concerning Landey's case.

The State filed an information on May 24, 1988, charging Landey with vehicular homicide. The King County Prosecutor's Office scheduled an arraignment for June 2, 1988, and prepared a letter with Landey's North Bend address on it advising him of the filing of an information and his scheduled arraignment. In a declaration filed by the State, an employee of the prosecutor's office stated that when an information is filed, the prosecutor's office generally sends a letter to a defendant's most recent, known address. Although a copy of such a letter was in the case file, the court found that the State failed to carry its burden to establish that it was mailed to Landey.

Landey failed to appear at his arraignment scheduled on June 2, 1988. The court ordered a bench warrant and set

bail at $10,000. An employee of the prosecutor's office attempted to telephone Landey after he failed to appear at the arraignment, but the phone number which he had given when he was arrested was not in service. On June 15, 1988, a police officer tried again to telephone Landey, searched for him in a reverse directory, and attempted to locate him through the employment security and welfare offices but was unsuccessful.

The police apprehended Landey on September 12, 1988, and arraigned him 2 days later. Landey asserted that the timing of his arraignment violated CrR 3.3. The court agreed and dismissed the case on November 23, 1988.

## DISCUSSION

CrR 3.3(c)(1) requires a defendant not detained in jail to be brought to trial within 90 days of arraignment. However, if a delay occurs between the filing of an information and a defendant's arraignment, then CrR 3.3 begins to operate from the time the information is filed. *State v. Striker,* 87 Wn.2d 870, 875, 557 P.2d 847 (1976). The *Striker* rule applies only when an unduly long delay occurs between filing the information and the arraignment date. *State v. Nelson,* 47 Wn. App. 579, 583, 736 P.2d 686, *review denied,* 108 Wn.2d 1024 (1987). A delay as little as 45 days has been held sufficient to invoke the *Striker* rule. *State v. Carpenter,* 94 Wn.2d 690, 694, 619 P.2d 697 (1980). A delay of 7 days, however, is not long enough. *State v. Anderson,* 94 Wn.2d 176, 183, 616 P.2d 612 (1980). Here, because 113 days elapsed between the filing of the information and Landey's appearance in court, we must determine if the delay was unreasonable.

Two categories of time periods escape the reach of the *Striker* rule. First, we exclude delays caused by fault or connivance of the defendant. *State v. Baxter,* 45 Wn. App. 533, 536–37, 726 P.2d 1247 (1986). Second, we exclude delays caused by circumstances that render identification and apprehension of the defendant extremely difficult.

*State v. Nelson,* 47 Wn. App. 579, 584, 736 P.2d 686, *review denied,* 108 Wn.2d 1024 (1987).[1]

█ The State has failed to cite facts in the record and to provide persuasive argument in support of its second assignment of error, that Landey's fault or connivance caused the delay here. Therefore, we examine only the application of the unavailability category of delay. To establish unavailability, the State must demonstrate that it exercised "good faith and diligent efforts to obtain the availability of the defendant." *Nelson,* 47 Wn. App. at 584 (citing *State v. Peterson,* 90 Wn.2d 423, 428, 585 P.2d 66 (1978)); *see also State v. Pizzuto,* 55 Wn. App. 421, 431, 778 P.2d 42 (1989).

The trial court concluded here that the State acted in good faith. Thus, the only issue before us is the correctness of the trial court's conclusion that the State failed to exercise due diligence to obtain Landey.

Several cases have analyzed the amount of effort required of the State to constitute due diligence. In *State v. Hanson,* 52 Wn. App. 368, 760 P.2d 941, *review denied,* 111 Wn.2d 1030 (1988), the court concluded that when the State's agent attempted service of the defendant at his parents' address and tried several times to locate the defendant at a bar that the defendant supposedly frequented, the State exercised due diligence. 52 Wn. App. at 374. Although other means of locating the defendant were available, the court refused to discount the efforts made by the State to find the defendant. *Hanson,* at 375.

In *State v. Nelson, supra,* the police searched a house, found contraband, and arrested the defendant. 47 Wn. App.

---

[1]This category of delay, often termed "unavailability," has received mixed treatment by panels of Division Two of the Court of Appeals. *See State v. Hanson,* 52 Wn. App. 368, 760 P.2d 941, *review denied,* 111 Wn.2d 1030 (1988); *Hanson,* at 377 (Petrich, J., concurring); *State v. Hunnel,* 52 Wn. App. 380, 760 P.2d 947 (1988); *Hunnel,* at 386 (Alexander, A.C.J., concurring). However, recent decisions from Division One evidence the rule's continued viability. *See State v. Pizzuto,* 55 Wn. App. 421, 431, 778 P.2d 42 (1989); *State v. Ling,* 55 Wn. App. 361, 363, 777 P.2d 1068 (1989).

at 580. When booked into jail, the defendant gave his home address which was different from the address of the house where the evidence was found. The State filed an information and attempted to serve a summons upon the defendant at the address where the defendant and the contraband were found. Unable to find the defendant at that house, the State allowed 6 months to elapse before arraigning the defendant. The Court of Appeals held that the State did not exercise due diligence because it had not sent a summons to the address which the defendant had given when he was booked. *Nelson,* at 585.

■ In–hand service of a summons is not necessarily required to establish due diligence. In *State v. Perry,* 25 Wn. App. 621, 612 P.2d 4 (1980), the court held that sending a summons by mail to a last known address is sufficient to constitute due diligence. The court noted that, although the State could have located the defendant through his attorney or through his parents whose address was known, the attempt to contact him by mail was sufficient. 25 Wn. App. at 623.

The State's attempts to contact or apprehend Landey after filing the information on May 2, 1988, are summarized as follows:

1. The prosecutor's office prepared a letter addressed to Landey in North Bend. An employee of the prosecutor's office stated that office policy required mailing of the letter when an information is filed.

2. An agent for the State tried numerous times to telephone Landey at the number which Landey had given the police officer when he was arrested.

3. The agent searched reverse directories, and tried to locate Landey through employment security and welfare offices without success.

Landey argues that the State failed to exercise due diligence because (1) it made no attempt to serve the warrant in person, (2) it did not check the North Bend post office, and (3) it made no attempt to notify Landey through his attorney.

Here, although the State failed to establish to the satisfaction of the trial court that it sent a letter to Landey's address, it made several other attempts which demonstrate a diligent effort to notify him. The State tried to find Landey by telephone numerous times, by contacting local governmental agencies, and by looking in directories. As the court stated in *Perry*, the law does not require "law enforcement agencies . . . to physically go out and search the countryside for defendants who have either given the wrong address to the Court or who moved from that address without leaving forwarding information." 25 Wn. App. at 623.

We are unpersuaded by Landey's assertions that had the State used other methods, it would have found him. The State had no duty to obtain in-hand service of Landey. In *Perry,* we rejected the assertion that the State should have contacted the defense attorney for information as to the defendant's whereabouts. With hindsight, it is always possible to find some method by which the State would have located the defendant. With enormous case loads facing our large counties, prosecutors' offices cannot be expected to pursue every possible avenue to obtain the defendant's presence at an arraignment. Dismissal is a severe remedy, and therefore, requires that the *Striker* rule be applied with caution. We decline to apply the *Striker* rule under these facts.

We reverse and remand for trial.

COLEMAN, C.J., and BAKER, J., concur.

Reconsideration denied May 16, 1990.

Review granted at 115 Wn.2d 1008 (1990).