# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2878

_____

United States of America,                    *
                                             *
                   Appellee,                 *
                                             *   Appeal from the United States
        v.                                   *   District Court for the
                                             *   Eastern District of Arkansas.
Robert McGhee,                               *
                                             *
                   Appellant.                *

_____

Submitted: March 13, 2008
Filed: July 7, 2008

_____

Before MURPHY, BRIGHT, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Robert Evans McGhee of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d), and brandishing a firearm in violation of 18 U.S.C. § 924(c). He was sentenced to 141 months' imprisonment and 3 years' supervised release. He appeals claiming violations of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and the Sixth Amendment, error in not having a hearing after two jurors objected to the verdict, and error in allowing the government to use a collage during closing argument. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

"The Speedy Trial Act [STA] requires that a defendant be brought to trial within 70 days from the date of indictment or from the date he makes his first appearance before an officer of the court in which the charge is pending, whichever is later." **United States v. Shepard**, 462 F.3d 847, 863 (8th Cir.), *cert. denied*, 127 S. Ct. 838 (2006), *citing* **18 U.S.C. § 3161(c)(1)**.  As relevant here, specific periods of delay are excluded for: (1) delay caused by pretrial motions, whether filed by the defendant or the prosecution, **§ 3161(h)(1)(F)**; (2) delay resulting from any proceeding to determine the defendant's mental competency, **§ 3161(h)(1)(A)**; and (3) delay resulting from the transportation of the defendant to and from places of examination or hospitalization, except any time consumed in excess of 10 days shall be presumed unreasonable, **§ 3161(h)(1)(H)**.  This court reviews the district court's findings of fact for clear error and its legal conclusions de novo.  **Shepard**, 462 F.3d at 863; **United States v. Degarmo**, 450 F.3d 360, 362 (8th Cir.), *cert. denied*, 127 S. Ct. 516 (2006).

The district court[1] stated the facts:

> The parties agree that 33 days under the STA have expired already.

> Defendant was arrested by the Little Rock police for bank robbery on November 17, 2004, and was released from the Pulaski County Jail in February 2005 without being charged.  He was indicted by a Federal Grand Jury on June 8, 2005, arraigned on June 15, 2005, and on July 19, 2005, he moved for his first continuance.  Defendant requested a second continuance, which was granted on January 19, 2006, and the trial was reset for June 5, 2006.

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

On May 31, 2006, the Prosecution made its only request for continuance because an important witness was ill and unable to testify. This motion was granted and the trial date was moved to November 20, 2006.

While awaiting trial, Defendant moved for a Determination of Mental Competency. His motion was granted on August 9, 2006. This order committed Defendant to the Attorney General's custody, and excluded from the STA any delay caused by the examination. Although a mental capacity evaluation was ordered in August 2006, Defendant was still in Arkansas in October 2006, awaiting transportation to Florida.

On October 2, 2006, Defendant asked to withdraw his mental evaluation motion, and requested an emergency hearing. Both requests were denied by an October 12, 2006 Order. The Order directed the United States Marshal Service ("USMS") to take Defendant to Florida on October 16, 2006.

Defendant arrived at the designated medical facility on October 17, 2006. The mental evaluation report was filed on January 3, 2007. However, the report is dated December 11, 2007. On January 4, 2007 the Bureau of Prisons was notified that Defendant was ready to be taken back to Arkansas. However, Defendant did not return to Arkansas until January 24, 2007. Consequently, Defendant's trial was reset for May 21, 2007.

The first issue is the time period from August 9 – the date of the order for mental competency – to October 17 – the date McGhee arrived in Florida to complete the evaluation. McGhee contends that it took 69 days to transport him to Florida. He alleges that this 69-day delay should be counted toward the STA computation. The government, on the other hand, claims that this time period involved "any proceeding to determine the mental competency of the defendant." It maintains that this delay is excluded from the STA computation. Agreeing with the government, the district court ruled that the period between August 9 to October 16 is not counted under the STA because it involved the process of completing a mental competency evaluation, and

not the transportation of McGhee. The court stated: "If the delay was caused by the *process* involved in arranging the evaluation, then the time is not counted. But, time that exceeds 10 days during Defendant's *transportation* will be counted." (emphasis in original).

The district court relied on *United States v. Vasquez*, 918 F.2d 329 (2d Cir. 1990). In *Vasquez*, an order for a psychiatric examination was signed on October 7, 1987, and filed the following day. *Id.* at 331. There was no record that the Marshals Service received the order. *Id.* Four months passed before the government was aware of this fact. *Id.* The government submitted a second order, signed on February 11, 1988, and filed on February 17. *Id.* The defendant did not reach the correctional facility for the psychiatric examination until June 18. *Id.* The court received the psychiatric report on August 3, 1988. *Id.* The defendant argued the unreasonable delays associated with the completion of the mental competency evaluation violated the STA's 70-day limitation. *Id.* at 333. Rejecting the defendant's argument, the Second Circuit held:

> Since the delays here complained of by Vasquez arose from proceedings to determine his competency and were prior to the conclusion of the hearing thereon, they must be excluded from the calculation of the speedy trial clock whether or not they are reasonable. This applies both to delays prior to delivery of the mental competency report by the warden of Butner on August 3, 1988, and to the pretrial proceedings that extended for a year thereafter.

*Id.*, *relying on* **Henderson v. United States**, 476 U.S. 321, 330 (1986).

Similarly, here, the period of delay from August 9 to October 12, 2006, involved *proceedings* to determine McGhee's competency. This time is excludable under the STA, whether reasonable or unreasonable. *See* **§ 3161(h)(1)(A)** (excluding delays caused by proceedings to determine the defendant's mental competency); *see*

*also* **Henderson**, 476 U.S. at 330 (excluding period of delay for pretrial motions "whether or not a delay in holding that hearing is 'reasonably necessary'").[2]

The period of delay from October 13 to October 17, 2006, did involve the *transportation* of McGhee. Because McGhee arrived in Florida on October 17, five days after the order directing transportation to Florida, this period is excluded from the STA computation. *See* **§ 3161(h)(1)(H)** (excluding delay caused by transportation of defendant, except any time in excess of 10 days is presumed unreasonable).

The period from October 18, 2006, to January 4, 2007, is excluded from the STA computation as it relates to a proceeding to determine McGhee's mental competency. *See* **§ 3161(h)(1)(A)**. McGhee asserts that part of this period should not be excluded from the STA computation. He claims December 11 is the day that the 10-day transportation clock starts, not January 4. The mental competency report was completed on December 11, and filed with the court on January 3. On January 4, the Bureau of Prisons was notified that McGhee was ready to return to Arkansas. Contrary to McGhee's assertion, the statute clearly starts the clock on the date of an order directing transportation. *See* **§ 3161(h)(1)(H)** ("except that any time consumed in excess of ten days from the date an *order* of removal or an *order* directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable") (emphasis added); *see also* **United States v. Garrett**, 45 F.3d 1135, 1139 (7th Cir. 1995) ("Further, the statute is specific as to what triggers the ten day

---

[2]The period from October 2 to October 12 is also excluded under section 3161(h)(1)(F). On October 2, McGhee moved to withdraw his mental evaluation motion and requested an emergency hearing. On October 12, the district court denied the requests, directing the Marshals Service to take McGhee to Florida. This period of delay resulting from McGhee's pretrial motions is excluded from the STA computation. *See § 3161(h)(1)(F)* (excluding delays caused by pretrial motions).

transportation period: the date of an order directing such transportation.”). In this case, the clock starts on January 4.

The next issue is how many days are excluded under the STA from January 4 – the date of the order directing transportation – to January 24 – the date McGhee arrived in Arkansas. According to the government, McGhee was transferred to Atlanta on January 9. On January 10, he was taken to Oklahoma City. McGhee was scheduled to leave there on January 16, but an ice storm grounded flights for two days. All stranded prisoners were re-prioritized and rescheduled for flights the following week. The district court ruled that the government exceeded the 10-day limitation by 9 days and failed to rebut the presumption that the transportation delay was unreasonable because McGhee should have been in Arkansas by January 15. In 2007, Martin Luther King, Jr. Day was January 15. The government argues that weekends and holidays should be excluded from the 10-day period under Rule 45(a)(2) of the Federal Rules of Criminal Procedure and that any delay caused by the ice storm is reasonable.

Rule 45(a)(2) excludes intermediate Saturdays, Sundays, and legal holidays from the computation of time periods less than 11 days. **Fed. R. Crim. P. 45(a)(2)**, **(a)(4)** (Martin Luther King, Jr.'s Birthday listed as a legal holiday). Rule 45(a) also makes an exception for weather: “Include the last day of the period unless it is a Saturday, Sunday, legal holiday, or day on which *weather* or other conditions make the clerk's office inaccessible.” *Id.* at **(a)(3)** (emphasis added).

In *United States v. Vickerage*, 921 F.2d 143, 147 (8th Cir. 1990), this court applied Rule 45(a) to the STA. The court ruled that because the 70th day was a Sunday and the trial began the next working day, there was no speedy trial violation. *Id.* Similarly, other circuits use Rule 45 to interpret the STA. *See **United States v. Bond***, 956 F.2d 628, 632 (6th Cir. 1992); ***Garrett***, 45 F.3d at 1140 n.6 (Seventh

Circuit); ***United States v. Skanes***, 17 F.3d 1352, 1354 (11th Cir. 1994) (per curiam) (listing cases from the First, Fourth, Eighth, and Ninth Circuits).

Applying Rule 45(a), and thus excluding weekends and legal holidays, McGhee should have been in Arkansas by Friday, January 19. Because the ice storm did not occur on the last day of the period, the two days lost by it are *not* excluded from the 10-day period. *See* **Fed. R. Crim. P. 45(a)(3)**. McGhee did not arrive in Arkansas until January 24. Therefore, the government used 3 days (in excess) to transport McGhee; these days count toward the STA computation. *See* **§ 3161(h)(1)(H)**.

In conclusion, a total of 36 days are counted toward the 70-day limitation; there was no violation of the STA.

## II.

The Sixth Amendment requires: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." **U.S. Const. amend. VI**. It "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." ***United States v. Shepard***, 462 F.3d 847, 864 (8th Cir. 2006). For Sixth Amendment claims, this court considers a four-factor balancing test: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant. ***Id.***, *quoting* ***Barker v. Wingo***, 407 U.S. 514, 530 (1972). "A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors." **Shepard**, 462 F.3d at 864, *quoting* ***United States v. Titlbach***, 339 F.3d 692, 699 (8th Cir. 2003). It is unusual, however, "to find the Sixth Amendment has been violated when the Speedy Trial Act has not." **Shepard**, 462 F.3d at 864.

The first factor of the test is a "double inquiry." **United States v. Degarmo**, 450 F.3d 360, 364 (8th Cir. 2006). To trigger a speedy trial analysis, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." **Id.** at 364-65. If this initial showing is made, this court will "consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." **Id.** at 365.

Here, there was a 915-day delay from the day of rearrest to the day of trial. This is a presumptively prejudicial delay that triggers a STA analysis. *See **Doggett v. United States***, 505 U.S. 647, 652 n.1 (1992) (stating most courts "have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year"); **Shepard**, 462 F.3d at 864. As for the second prong, McGhee is responsible for most of the delays. He moved for two continuances, a mental competency evaluation, an emergency hearing to withdraw his request for determination of mental competency, and to dismiss the indictment. The government, however, requested one continuance because a witness was ill and unable to testify. "Further, there is no evidence that the Government intentionally caused any delay or filed pretrial motions to cause delay in order to gain a tactical advantage." **Id.** To the third factor, McGhee asserted his speedy trial right on January 26, 2007, after he returned to Arkansas from his mental competency evaluation. He moved to dismiss the case, a hearing was held, and the district court denied the motion on the first day of trial.

To the fourth prong – prejudice – McGhee insists that he need not show actual prejudice because the 915-day delay is sufficiently long that prejudice can be assumed. Although the 915-day triggers the STA analysis, and thus is presumptively prejudicial, the analysis does not end there. *See **Barker***, 407 U.S. at 530 (noting the length of the delay is a "triggering mechanism" for the inquiry into the other factors); **Doggett**, 505 U.S. at 651-52 ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold

dividing ordinary from 'presumptively prejudicial' delay"); ***Shepard***, 462 F.3d at 864 ("A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors.").

The Court has recognized that "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." ***Doggett***, 505 U.S. at 654.

Here, McGhee does not point to any actual prejudice in the delay. Although incarcerated before trial, he was incarcerated only because the magistrate judge revoked his release after failing a drug test and lying under oath. Any prejudice from pretrial incarceration was attributable to McGhee's own acts. Additionally, McGhee does not indicate that his defense was impaired by the delay. And although anxiety and concern are present in every case, this alone does not demonstrate prejudice. *See* ***Shepard***, 462 F.3d at 865, *citing* ***Morris v. Wyrick***, 516 F.2d 1387, 1391 (8th Cir. 1975) ("Anxiety and concern of the accused are undoubtedly present to some degree in every case . . . [h]owever, that alone does not establish prejudice where . . . the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances.").

Considering the *Barker* factors and the facts here, McGhee's Sixth Amendment right to a speedy trial was not violated.

### III.

McGhee contends the district court erred in not ordering a hearing when two jurors alleged intimidation by other jurors.

"The district court has broad discretion in managing juror misconduct allegations, and its decision whether to conduct an evidentiary hearing over such allegations will be affirmed absent an abuse of discretion." *United States v. Wintermute*, 443 F.3d 993, 1002 (8th Cir. 2006).

Rule 606(b) of the Federal Rules of Evidence provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. . . . A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

In other words, jurors may *not* testify as to how the jury reached its verdict. *See* **Fed. R. Evid. 606(b) advisory committee's note**. "[T]his protection extends to each of the components of deliberation, including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process." *Id.*

Therefore, the jurors here were not competent to testify about alleged intimidation by other jurors as this goes to how the verdict was reached. *See id.* The district court did not abuse its discretion in denying a hearing on this issue. *See Dunne v. Libbra*, 448 F.3d 1024, 1029 n.6 (8th Cir. 2006) ("when the party seeking to question jurors presents no evidence the verdict was tainted by extraneous information or outside influence, the request for a hearing is properly denied").[3]

---

[3]Appellant's motion to supplement the record with a juror's statement about deliberations is denied.

IV.

McGhee asserts the district court erred in allowing the government to show a collage during closing argument. He insists the collage was unfairly prejudicial. The collage is a photograph of the robbery suspect, taken at the time of the robbery, with an image of McGhee, in a similar pose, inserted next to the suspect.

"The use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court." *United States v. Wainright*, 351 F.3d 816, 820 (8th Cir. 2003). "Charts or summaries may include assumptions and conclusions, but said assumptions and conclusions must be based upon evidence in the record." *Id.* at 821.

Here, the court did not abuse its discretion. All the photographs in the collage were previously admitted into evidence. *See id.* And although the collage included the ultimate conclusion – that the bank robber is McGhee – this was not unfairly prejudicial as closing argument may be argumentative and assert conclusions. *See United States v. Crockett*, 49 F.3d 1357, 1361 (8th Cir. 1995) ("However, there is nothing inherently wrong with closing argument being argumentative, so long as it is proper argument.").

V.

The judgment of the district court is affirmed.

_____

-11-