This opinion was filed for record

at $8:00$ a.m. on Nov 8, 2018

_____
SUSAN L. CARLSON
SUPREME COURT CLERK

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE NOV 0 8 2018
Fairhurst. CJ
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 94902-6 |
| | ) | |
| v. | ) | |
| | ) | EN BANC |
| ANTHONY GENE HAND, | ) | |
| | ) | |
| Petitioner. | ) | Filed: ___NOV 0 8 2018___ |
| | ) | |

FAIRHURST, C.J.—This case presents the question of whether detaining an incompetent defendant in jail for 76 days before providing competency restoration treatment violates his substantive due process rights under the Fourteenth Amendment to the United States Constitution. The trial court found Anthony Gene Hand incompetent to stand trial and ordered Western State Hospital (WSH) to admit Hand within 15 days for competency restoration treatment. Hand remained in county jail for 61 days after the court's 15 day deadline, for a total of 76 days of confinement. Hand's competency was eventually restored through treatment at WSH. He was subsequently convicted on both charges. Hand argues that the State violated

his substantive due process rights by detaining him in jail for 76 days before admitting him to WSH for treatment—and that the proper remedy is dismissal with prejudice. We affirm the Court of Appeals and hold that detaining Hand in county jail for 76 days violated his due process rights but that dismissal with prejudice, the only relief Hand requests, is not warranted.

## I. FACTS AND PROCEDURAL HISTORY

On September 22, 2014, the Pierce County prosecuting attorney charged Hand with first degree escape. The police arrested Hand pursuant to an arrest warrant and found a bag of methamphetamine in his waistband during booking. The State charged Hand with unlawful possession of a controlled substance. Hand did not post bail and therefore remained in county jail.

Hand's counsel requested a competency evaluation under former RCW 10.77.060(1)(a) (2012). On December 24, 2014, the trial court granted the request and ordered that Hand be held without bail pending a competency determination. After considering the opinion of the mental health evaluator, the court found Hand not competent to stand trial and ordered a 45 day commitment to WSH for competency restoration to begin within 15 days of the order.

On January 19, 2015, Hand sent a letter to the court suggesting that the charges be dropped because he was still in jail and had not been admitted to WSH for treatment. On February 11, 2015, Hand still had not been admitted to WSH, and he filed a motion to dismiss based on a substantive due process violation or,

alternatively, for WSH to show cause why it should not be held in contempt.[1] The court denied the motion to dismiss, finding no due process violation, but ordered a show cause hearing. Hand filed another motion to dismiss alleging a due process violation on February 18, 2015. On February 25, 2015, he filed yet another motion to dismiss or, in the alternative, to release him from custody.

At the show cause hearing on February 25, 2015, the court considered a declaration from Dr. Barry Ward explaining that Hand was placed on a waiting list because WSH did not have the ability to admit Hand at the time of the order. Dr. Ward further explained that the restoration treatment services unit was operating near full capacity and had a wait list of 113 defendants. According to Dr. Ward, 71 days was the average wait time for 45 day restoration cases. This delay was due to a significant increase in orders for inpatient evaluation or restoration and a decrease in the number of available beds.

Ultimately, the trial court found the Department of Social and Health Services (DSHS) in contempt of the trial court's December 24, 2014 order. The court ordered that Hand be transported to WSH by February 26, 2015, and imposed sanctions of $500 per day to be paid to the county jail for every day beyond the new deadline.

---

[1] Both parties acknowledged that Hand may be a class member in *Trueblood v. Department of Social & Health Services*, 101 F. Supp. 3d 1010, 1022 (W.D. Wash. 2015), *vacated and remanded*, 822 F.3d 1037 (2016), in which the federal district court held that the DSHS delay in providing court ordered competency services violated class members' due process rights. The trial court held that the federal proceedings have no bearing on the resolution of this case.

Despite the order, Hand was not transferred to WSH on February 26, 2015. On March 4, 2015, finding no due process violation, the court denied the motions to dismiss. On March 10, 2015, 61 days after the court's 15 day deadline expired, WSH finally admitted Hand for restoration treatment. The court ordered DSHS to pay the county jail $6,000 in sanctions based on failure to obey a court order.

On April 29, 2015, the trial court found Hand competent to stand trial. A bench trial was held on stipulated facts, and the court found Hand guilty as charged. Hand appealed his convictions to the Court of Appeals. The Court of Appeals, Division Two, held that the State violated Hand's substantive due process rights by detaining him in jail for 76 days before WSH admitted him for treatment. *State v. Hand*, 199 Wn. App. 887, 890, 401 P.3d 367 (2017). However, the Court of Appeals held that dismissal was not required under CrR 8.3(b) because Hand could not show that the delay prejudiced his right to a fair trial. *Id.* at 899. Hand petitioned this court for review, which we granted. *State v. Hand*, 189 Wn.2d 1024, 406 P.3d 279 (2017).

## II. ISSUES

A.    Did the State violate Hand's substantive due process rights under the Fourteenth Amendment by detaining him in county jail for 76 days without bail while he awaited competency restoration treatment?

B.    Is dismissal with prejudice an appropriate remedy under these facts?

## III. STANDARD OF REVIEW

Constitutional questions are questions of law and are reviewed de novo. *In re Det. of Morgan*, 180 Wn.2d 312, 319, 330 P.3d 774 (2014).

## IV. ANALYSIS

Washington has statutory procedures for the identification and treatment of mentally incompetent criminal defendants. Ch. 10.77 RCW. A person is incompetent to stand trial if a mental disease or defect causes him or her to lack "the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense." Former RCW 10.77.010(15) (2011). RCW 10.77.050 provides that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."

If there is reason to doubt a defendant's competency, the trial court shall appoint or request the secretary of DSHS to designate an expert to evaluate the mental condition of the defendant. Former RCW 10.77.060(1)(a). If the court finds the defendant incompetent based on the expert's report, the court shall stay the proceedings and commit the defendant to the custody of DSHS for placement into competency restoration treatment. Former RCW 10.77.084(1)(a) (2012); former RCW 10.77.086 (2013). If competency is then restored, the court shall lift the stay and continue the criminal proceedings. Former RCW 10.77.084(1)(b). If competency is not restored, the court shall dismiss the criminal proceedings without prejudice. Former RCW 10.77.084(1)(c).

Former RCW 10.77.068 (2012) expressed the State's "performance targets" for the timeliness of admissions for restorative treatment. The statute designated a performance target of seven days or less for admitting a defendant in pretrial custody awaiting restorative treatment. Former RCW 10.77.068(1)(a)(i).[2] The legislature expressly provided that performance targets do not "create any new entitlement or cause of action related to the timeliness of competency evaluations or admission for inpatient services related to competency to proceed or stand trial, nor can it form the basis for contempt sanctions under chapter 7.21 RCW or a motion to dismiss criminal charges." Former RCW 10.77.068(5).

Hand contends that the State violated his substantive due process rights by detaining him in jail for 76 days before WSH admitted him for treatment. He asserts that this violation warrants dismissal with prejudice because no other remedy provides him adequate relief.

A.    The State violated Hand's substantive due process rights by detaining him for 76 days before providing treatment because the nature and duration of his detention was not reasonably related to the restorative purpose for which the trial court admitted him

Constitutional questions pertaining to the pretrial confinement of incompetent criminal defendants are analyzed under the due process clause of the Fourteenth

---

[2] During the course of this litigation, the legislature amended RCW 10.77.068 to set a 14 day time limit for admission of defendants detained pending competency restoration treatment. RCW 10.77.068(1)(a)(i)(A)-(B).

Amendment.[3] *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003). When determining whether an incompetent criminal defendant's substantive due process rights have been violated, the court must balance the defendant's liberty interests against interests of the State. *Id.* at 1121; *see Trueblood v. Dep't of Soc. & Health Servs.*, 822 F.3d 1037, 1043 (9th Cir. 2016). Incompetent criminal defendants have a liberty interest in receiving restorative treatment and a liberty interest in freedom from incarceration because they have not been convicted of the charged crimes. *Mink*, 322 F.3d at 1121. The relevant question is whether the nature and duration of Hand's detention is reasonably related to the purpose for which he was committed. *Id.* at 1122 (citing *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972)).

Both federal courts that have addressed this issue determined that the Fourteenth Amendment requires the State to admit an incompetent defendant to a state hospital for competency restoration treatment within seven days of the order calling for treatment.[4] *Id.* at 1123; *Trueblood v. Dep't of Soc. & Health Servs.*, 101 F.

---

[3] We reject the State's argument that Hand's claim is not governed by the Fourteenth Amendment—the United States Supreme Court analyzed a nearly identical issue under the due process clause of the Fourteenth Amendment. *Jackson v. Indiana*, 406 U.S. 715, 731, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972) ("Indiana's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process."). Hand's detention may also implicate his rights under the Fourth and Sixth Amendments to the United States Constitution, as the State suggests, but Hand does not claim that his Fourth or Sixth Amendment rights have been violated here. The State's Fourth and Sixth Amendment arguments have no bearing on our resolution of Hand's Fourteenth Amendment substantive due process claim.

[4] The California Court of Appeal addressed this same issue and affirmed a trial court's finding that "60 days was the outside limit" for ensuring timely admission to a state hospital for

Supp. 3d 1010, 1022 (W.D. Wash. 2015), *vacated and remanded*, 822 F.3d 1037 (2016). In *Mink*, Oregon Advocacy Center (OAC) sued the Oregon State Hospital (OSH) on behalf of its constituents, mentally incompetent criminal defendants, on the basis that OSH was violating incompetent defendants' Fourteenth Amendment due process rights. 322 F.3d at 1107. OAC argued that OSH violated defendants' substantive due process rights by unreasonably detaining them in county jails for weeks or months before admitting them to OSH for restorative treatment. *Id.* The United States District Court for the District of Oregon agreed with OAC and held that OSH violated class members' substantive due process rights by failing to admit them within *seven days* of the order declaring them incompetent. *Id.* at 1119.

The United States Court of Appeals for the Ninth Circuit affirmed the trial court's declaration of a seven day constitutional limit, holding that civilly committed persons must receive mental health treatment that gives them a realistic opportunity for restoration or improvement and that a lack of funds or facilities does not justify a hospital's failure to provide such treatment. *Id.* at 1121. Relying on the United States

---

treatment. *In re Loveton*, 244 Cal. App. 4th 1025, 1044, 198 Cal. Rptr. 3d 514 (2016). The court's analysis was informed by a California statute that required the medical director of the state hospital to report on each defendant's progress toward recovery of competence within 90 days of commitment. *Id.* at 1043. The trial court reasoned, based on evidence in the record, that a report takes 17 to 20 days to produce. The trial court then concluded that 60 days was an appropriate deadline for admission so that the hospital could produce a report before the 90 day statutory deadline expired. *Id.* The California Court of Appeal explained that "[a]lthough transferring [incompetent] defendants in less than 60 days after commitment should of course remain the goal, the trial court's order realistically places an outside limit on what is statutorily and constitutionally permissible." *Id.* at 1047.

Supreme Court's holding in *Jackson*, 406 U.S. at 738,[5] the court held that detaining incapacitated defendants for "weeks or months" violates their substantive due process rights because "the nature and duration of their incarceration bear no reasonable relation to the evaluative and restorative purposes for which courts commit those individuals." *Mink*, 322 F.3d at 1122.

Similarly, in *Trueblood*, the United States District Court for the Western District of Washington found "seven days to be the maximum justifiable period of incarceration" allowed by the Fourteenth Amendment. 101 F. Supp. 3d at 1022. After a bench trial, the court concluded that a "seven-day limit is required by the constitution" because holding incompetent defendants in jail causes harm that directly conflicts with the goal of competency restoration:

> Each additional day of incarceration causes further deterioration of class members' mental health, increases the risks of suicide and of victimization by other inmates, and causes illness to become more habitual and harder to cure, resulting in longer restoration periods or in the inability to ever restore that person to competency.

*Id.* at 1022.

---

[5] The Supreme Court held that under the due process clause,
a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. . . . Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.
*Jackson*, 406 U.S. at 738. The Court explained that "due process requires that the nature and duration of the commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.*

The court ordered a permanent injunction requiring, inter alia, that individuals ordered to receive restorative treatment are admitted to a state hospital within seven days of the order. *Id.* at 1023-24. DSHS did not challenge this part of the order on appeal. *Trueblood*, 822 F.3d at 1040.[6]

Here, the trial court ordered WSH to admit Hand for restorative treatment within 15 days of the order finding Hand incompetent. WSH did not admit Hand within 15 days of the order. Instead, Hand remained in jail for a total of 76 days, awaiting restorative treatment. Detaining an incompetent defendant in jail for months likely harms a defendant's mental health and runs counter to the very purpose for which he was committed—which is to restore the defendant's competency. *Mink*, 322 F.3d at 1121. Because prolonged incarceration while awaiting treatment may cause serious harm to defendants and does not meaningfully advance the State's interest in restoring defendants' competency to stand trial, the constitutional due process balancing favors Hand. In light of the 7 day constitutional limit expressed by the Ninth Circuit in *Mink* and the district court in *Trueblood*, and the legislature's 7 day performance target, we affirm the Court of Appeals and hold that the State's 76 day detention of Hand violated his substantive due process rights to restorative treatment and to be free from incarceration. *See also Willis v. Dep't of Soc. & Health Servs.*,

---

[6] The district court's ruling in *Trueblood* required two things. First, it required the State to provide in-jail competency evaluations within seven days of the order calling for an evaluation. 101 F. Supp. 3d at 1023-24. Second, it required the State to admit persons ordered to receive competency restoration services into a state hospital within seven days of the order calling for

No. C16-5113RBL, 2017 WL 1064390, at *6 (W.D. Wash. Mar. 21, 2017) (court order) ("At the time of Willis's incarceration, it was clearly established that indefinitely incarcerating incompetent defendants while they awaited competency restoration, because there was not room in the state hospital, violated their constitutional due process rights.").

B.    Hand fails to show that dismissal with prejudice is warranted under these facts

As a remedy, Hand seeks dismissal *with* prejudice. Washington currently has two statutory mechanisms by which incompetent defendants detained in jail can have their charges dismissed *without* prejudice.[7] First, RCW 10.77.079, enacted two months after the trial court found Hand competent to stand trial, allows a prosecuting attorney to dismiss a potentially incompetent defendant's charges without prejudice and refer the defendant for assessment by a mental health professional:

> If the issue of competency to stand trial is raised by the court or a party under RCW 10.77.060, the prosecutor may continue with the competency process or dismiss the charges without prejudice and refer the defendant for assessment by a mental health professional, chemical dependency professional, or developmental disabilities professional to determine the appropriate service needs for the defendant.

RCW 10.77.079(1).[8]

---

restoration services. *Id.* at 1024. DSHS challenged only the seven day time limit on providing competency *evaluations* on appeal. *Trueblood*, 822 F.3d at 1040.

[7] A trial court may be able to dismiss an incompetent defendant's charges without prejudice as a remedy for a substantive due process violation, but we decline to answer that question here because Hand is no longer incompetent and seeks only dismissal *with* prejudice.

[8] Even without being in jail, a person may be civilly committed under RCW 71.05.230 if professional staff at a facility providing mental health evaluation services determines that a person

Second, RCW 10.77.084(1)(c) allows a court to dismiss an incompetent defendant's charges without prejudice if the court finds the defendant's competency has not been restored by the end of the competency restoration period:

> If, following notice and hearing or entry of an agreed order under (b) of this subsection, the court finds that competency has been restored, the court shall lift the stay entered under (a) of this subsection. *If the court finds that competency has not been restored, the court shall dismiss the proceedings without prejudice*, except that the court may order a further period of competency restoration treatment if it finds that further treatment within the time limits established by RCW 10.77.086 or 10.77.088 is likely to restore competency, and a further period of treatment is allowed under RCW 10.77.086 or 10.77.088.

(Emphasis added.)

Case law now provides a third mechanism by which incompetent defendants detained in jail can have their charges dismissed without prejudice. In *State v. Kidder*, 197 Wn. App. 292, 295, 389 P.3d 664 (2016), decided more than a year after the trial court found Hand competent to stand trial, the Court of Appeals affirmed the trial court's use of RCW 10.77.084(1)(c) to dismiss a defendant's charges without prejudice after WSH failed to admit the defendant for treatment within the 90 day competency restoration period specified in the court's order of commitment.

*Kidder* and the statutory mechanisms described above allow a court or prosecuting attorney to dismiss an incompetent defendant's charges *without*

---

has a mental disorder or substance abuse disorder and files a petition with the court stating that the person presents a likelihood of serious harm or is gravely disabled. RCW 71.05.230(4)(b).

prejudice.[9] While it is not clear what Hand earlier wanted,[10] at this point he seeks only dismissal with prejudice. As Hand explains in his petition, "Dismissal without prejudice, the statutory relief, provides no remedy for Mr. Hand, as he has been convicted and is serving his sentence." Pet. for Review at 9. Hand cites no authority directly supporting his dismissal with prejudice argument. He contends that we should apply the reasoning used in *State v. Striker* (a speedy trial rights case) to dismiss his charges with prejudice. 87 Wn.2d 870, 876, 557 P.2d 847 (1976). In *Striker*, this court held that to discourage prosecutorial delay, a prosecution must be dismissed with prejudice if not brought to trial in a timely manner:

> In order to protect the right of the accused, and in accordance with the manifest policy expressed in the rules, to *discourage prosecutorial delays* which are not approved by the court, we hold that in such circumstances a prosecution must be dismissed with prejudice on timely motion of the defendant, if it is not brought to trial within the time specified in CrR 3.3, after the information or indictment is filed.

*Id.* at 877 (emphasis added). Hand does not argue before this court that his detention violated his right to a speedy trial.[11] Nor does he argue that his prolonged detention was the result of prosecutorial delay. Thus, *Striker* has no bearing on the resolution of this case.

---

[9] Trial courts may set an admission deadline in their commitment orders, as the court did here, and monitor the State's compliance with the order.

[10] Hand did not specify in his motions to dismiss whether he was requesting dismissal with or without prejudice, but the language in his January 19, 2015 letter to the trial court suggests that he was seeking dismissal without prejudice. *See* Clerk's Papers at 36 ("If not for the sake of regaining my freedom, at least for the sake of 'again' trying to obtain Mental Health 'Treatment.'" (underlining omitted)).

The 76 day delay in admitting Hand for treatment was caused by a lack of resources at WSH.[12] The trial court correctly imposed sanctions against WSH for violating its contempt order. These sanctions do not provide Hand relief, but Hand may be able to bring a civil claim for damages. *See Willis*, 2017 WL 1064390, at *6. The remedy that Hand seeks in this court, dismissal with prejudice, is simply not warranted under these facts.

## V. CONCLUSION

We affirm the Court of Appeals and hold that detaining an incompetent defendant for 76 days before providing competency restoration treatment violates the due process clause of the Fourteenth Amendment but that dismissal with prejudice is not warranted under these facts.

---

[11] Hand briefly alleged a speedy trial violation in his Court of Appeals brief. However, the argument is limited to one sentence at the end of the section devoted to his due process argument. He also raised the speedy trial argument briefly in his motions to dismiss.

[12] Hand's time spent in county jail will be counted toward his earned release time pursuant to WAC 137-30-030 and -040.

Fairhurst, C.J.

WE CONCUR:

_____

_____

_____

Wiggins, J.

González, J.

Gordon McCloud, J.

Yu, J.

No. 94902-6

MADSEN, J. (concurring)—Although I agree with the result, I disagree with the majority's position that Anthony Hand's detention awaiting competency treatment implicates substantive due process. Substantive due process necessarily requires that a fundamental right exists—either in statute or under the constitution. This is not the case here. RCW 10.77.068 establishes only aspirational timelines and that Western State Hospital (WSH) conduct competency evaluations and restorative services in a specified manner. A person does not have a fundamental right to services. Instead, I would hold that this is a speedy trial rights issue under the Sixth Amendment to the United States Constitution. However, Hand did not raise a speedy trial argument and waived that defense. Therefore, I also would affirm Hand's conviction, but I depart from the majority's rationale in doing so.

## Discussion

In *Jackson v. Indiana*, the United States Supreme Court held that mentally incompetent persons are denied equal protection when committed to a mental institution under less stringent standards than those required for release. 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972). The Court held "that a person . . . committed solely on

account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738. "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.*

This general principle was relied on by the district court in *Trueblood v. Department of Social & Health Services*, 101 F. Supp. 3d 1010 (W.D. Wash. 2015), *vacated and remanded*, 822 F.3d 1037 (9th Cir. 2016), and in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003). The majority relies on these two cases in holding that the pretrial detention of a defendant prior to commitment for restorative treatment falls under substantive due process.

Specifically, the court, on appeal in *Trueblood*, opined, "[W]e excluded delays due to competency issues from both the statutory and constitutional speedy trial analysis in part because 'the delays were all either directly caused by Defendant or . . . were deemed necessary in the interests of justice.'" *Trueblood*, 822 F.3d at 1044 (second alteration in original) (citing *United States v. Sutcliffe*, 505 F.3d 944, 957 (9th Cir. 2007)).

I disagree with the Ninth Circuit's interpretation of the Sixth Amendment speedy trial right as it relates to civil commitment. In my view, its opinion conflates two very distinct procedures—pretrial detention awaiting restorative treatment and pretrial civil commitment intended for restoration of competency to proceed to trial. A Sixth Amendment right to speedy trial is necessarily implicated when a defendant's trial is

2

being delayed simply because he is waiting for his competency restorative services. The Ninth Circuit's support for dismissing a Sixth Amendment issue is unpersuasive.[1]

*Jackson* can and should be distinguished. The issue in *Jackson* was the duration of the defendant's stay in civil commitment. 406 U.S. at 719. Due to the psychological evaluations of the defendant, the doctors testified that there was little hope for him to ever restore competency, opening the door to indefinite civil confinement. *See id.* The Court established the reasonableness standard to address the issue of someone being indefinitely confined *after* being evaluated and admitted to treatment as incompetent. In such a case, a defendant's fundamental rights to treatment and to liberty are implicated. Here, the issue is not pretrial commitment but, rather, pretrial detention. Due process is

---

[1] The court relied on *Sutcliffe* for the proposition that the Sixth Amendment is not implicated when the delays are caused by the defendant or were deemed necessary in the interest of justice. 505 F.3d at 957. The delay here was not caused by the defendant, and the only reason for the wait was because WSH refused to admit him for treatment because it was near capacity. The court in *Trueblood* opined that this was unpersuasive reasoning for the delay by holding a permanent injunction was appropriate. Although reaching this conclusion through substantive due process, it is clear that the delay caused by WSH is not "in the interest of justice" under the decision in *Sutcliffe*.

The court also cited a number of other cases to support its reasoning. *See Trueblood*, 822 F.3d at 1044 n.5. In *United States v. DeGarmo*, the court did not hold that the Sixth Amendment is inapplicable to mental competency cases but, rather, that the facts did not show a violation of the defendant's Sixth Amendment speedy trial rights. 450 F.3d 360, 365 (8th Cir. 2006). The same holds true for the decision in *United States v. Cope*, 312 F.3d 757, 777-78 (6th Cir. 2002).

Finally, in *United States v. Vasquez*, the court did not categorically preclude a Sixth Amendment violation. Instead the court held that the delay "would not necessarily have constituted a violation of Vasquez's rights under the Speedy Trial Act." 918 F.2d 329, 333 (2d Cir. 1990).

None of the cases the Ninth Circuit relied on in *Trueblood* stand for the proposition that the Sixth Amendment simply does not apply in pretrial detention awaiting commitment.

3

not implicated when a person is being detained for the purpose of awaiting a restorative

treatment unless such a right is created by operation of statute.

Here, the statute in question does not create a right to services for restorative

treatment. The statute in effect at the time of the court's order read:

> The legislature establishes the following *performance targets* for the
> timeliness of the completion of accurate and reliable evaluations of
> competency to stand trial and admissions for inpatient services related to
> competency to proceed or stand trial . . . . *The legislature recognizes that
> these targets may not be achievable in all cases* without compromise to
> quality of evaluation services, but intends for the department to manage,
> allocate, and request appropriations for resources *in order to meet these
> targets whenever possible . . . .*
>  (i) For a state hospital to extend an offer of admission to a defendant
> in pretrial custody for legally authorized treatment or evaluation services
> related to competency . . . seven days or less.

Former RCW 10.77.068(1)(a) (2012) (emphasis added). The plain language of the

statute does not create any duty on the part of WSH, nor does it create any remedies or

rights in the defendant.

Since there is no fundamental right implicated and the statutory scheme does not

impose a duty on WSH, nor does it give the defendant a remedy for prolonged detention

awaiting treatment, substantive due process is not implicated here.

However, the Sixth Amendment and article I, section 22 of the Washington State

Constitution do provide defendants with the right to a speedy trial. Under our

constitution, speedy trial rights are substantially the same as under the Sixth Amendment,

and we use the *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2181, 33 L. Ed. 2d 101 (1972),

balancing test to determine whether a constitutional violation has occurred. *State v.*

4

*Ollivier*, 178 Wn.2d 813, 826-27, 312 P.3d 1 (2013). The *Barker* test weighs the conduct of both the prosecution and the defendant. 407 U.S. at 529. Courts consider a number of nonexclusive factors, such as "the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right [to a speedy trial], and prejudice to the defendant.'" *Ollivier*, 178 Wn.2d at 827 (first alteration in original) (quoting *Barker*, 407 U.S. at 530).

Moreover, under CrR 3.3, we have created comprehensive guidelines to facilitate the timely processing of defendants. We have required that defendants detained in jail be brought to trial within 60 days after the commencement date. CrR 3.3(b)(1)(i). Recognizing issues relating to competency proceedings, we exempted the time it takes to restore competency from when the order is first entered to when the court finds the defendant competent. CrR 3.3(e)(1).

In applying CrR 3.3(e)(1) we must give effect to the statutory scheme governing competency. Thus, time should not be exempted under CrR 3.3(e) if a state hospital fails "to extend an offer of admission" to a defendant in pretrial custody within seven days.[2] Former RCW 10.77.068(1)(a)(i). CrR 3.3(e)(1) unequivocally states the "proceedings relating to the competency of a defendant" are excluded from computing time for trial. Former RCW 10.77.068 outlines the "proceedings" referred to in CrR 3.3(e)(1). Nothing in former RCW 10.77.068 treats time spent awaiting admission to a state hospital for

_____

[2] Former RCW 10.77.068(1)(a)(ii) states that the "competency evaluation in jail and distribution of the evaluation report" should occur within seven days. Moreover, former RCW 10.77.068(1)(a)(i) states that a state hospital has seven days to extend an "offer of admission" for legally authorized treatment or evaluation.

restorative treatment as a "proceeding." Since pretrial detention awaiting admission to a state hospital is not one of the enumerated proceedings outlined in former RCW 10.77.068, it cannot justifiably be an exemption under CrR 3.3(e)(1).

The Sixth Amendment requires that pretrial delays related to competency issues must be "deemed necessary in the interests of justice" to be exempted from the time calculation for purposes of speedy trial. *Sutcliffe*, 505 F.3d at 957; *see also supra* note 1. It can hardly be said that a defendant being detained awaiting restorative services for 76 days because of administrative delays is "necessary in the interest of justice." Moreover, this is distinct from cases where courts have found long periods of delay not presumptively prejudicial, *see, e.g.*, *United States v. DeGarmo*, 450 F.3d 360, 365 (8th Cir. 2006); *United States v. Cope*, 312 F.3d 757, 777-78 (6th Cir. 2002), because our time computation scheme under CrR 3.3(e)(1) excludes only proceedings relating to the competency of a defendant. Delays *awaiting* the proceeding (i.e., the restorative treatment) necessarily cannot be implicated within that calculation. If the hospital is unable to admit pretrial defendants in a timely manner, then the State may choose to dismiss the action without prejudice or to face a speedy trial rights violation.

Delay in state services due to lack of resources is not unheard of. For example, when the State is waiting for a toxicology report that is delayed due to backlogs, prosecutors may elect to dismiss an action without prejudice to avoid a speedy trial rights violation. Applying similar principles here will hold the State accountable for

6

competency proceedings and will provide relief for defendants awaiting restorative

treatment in historically backlogged and understaffed institutions.

I believe that the speedy trial analysis under the *Barker* test is appropriate for

pretrial detention of a defendant awaiting restorative treatment. The 60-day period to

take a defendant to trial under CrR 3.3(b)(1) has expired if we take into account the time

spent awaiting the restorative services beyond the aspirational 7-day period under former

RCW 10.77.068. Thus, Hand's speedy trial rights were violated. However, since he

failed to assert a Sixth Amendment speedy trial rights violation, the analysis ends.

## Conclusion

There is a distinction between pretrial detention and pretrial competency

restoration commitment, which implicates different constitutional rights. Since there is

no fundamental right or statutory right in receiving services, the Sixth Amendment's

speedy trial clause governs issues relating to pretrial detention, not substantive due

process. Because Hand fails to argue his right to a speedy trial has been violated here, his

conviction should stand.

_Madsen, J._

_Stephens, C.J._